UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHLEEN WHELEHAN,

                Plaintiff,

v.

BANK OF AMERICA PENSION PLAN FOR
LEGACY OCMPANIES-FLEET-TRADITIONAL
BENEFIT, BANK OF AMERICA BENEFIT
APPEALS COMMITTEE, and BANK OF AMERICA,

                Defendants.

Case # 17-CV-6581-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Kathleen Whelehan claims that Defendants Bank of America Pension Plan for Legacy Companies—Fleet—Traditional Benefit (the "Legacy Plan"), the Bank of America Benefit Appeals Committee, and Bank of America ("BoA") improperly denied her retirement benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). ECF No. 1. On November 27, 2017, Defendants moved to dismiss Plaintiff's suit. ECF No. 9. For the reasons stated below, Defendants' Motion to Dismiss is GRANTED, and their request for attorney's fees is DENIED.

## BACKGROUND[1]

**A.    Plaintiff's First Pension Inquiry**

Plaintiff worked for the Security Trust Company of Rochester, New York, a predecessor bank to BoA, between 1972 and 1986. In 2011, Plaintiff inquired about pension benefits owing to

---

[1] The following facts are taken from Plaintiff's Complaint, ECF No. 1, unless otherwise noted.

1

her under the Legacy Plan.[2] The Legacy Plan responded that it had no record of Plaintiff's participation in the plan but that she could demonstrate her participation by filling out a prior employment questionnaire and returning it with documentation of her benefit. Plaintiff filled out the questionnaire, which requested that she provide "copies of any documentation . . . that verifies employment history" such as "pay stubs or W-2 forms" and any additional information from the listed employer regarding retirement benefits, such as "a Social Security Administration Potential Private Pension Benefit Information letter, prior benefit calculations or other document(s) from Bank of America, or other employer named above." *Whelehan v. Bank of Am. Pension Plan for Legacy Cos.-Fleet-Traditional Benefit*, 5 F. Supp. 3d 410, 414 (W.D.N.Y. 2014).

Instead, Plaintiff sent a copy of an unsigned email from a former colleague at Security Trust Co. stating that Plaintiff had been a full-time employee at the bank, a form submitted to the Social Security Administration ("SSA") by Security Trust Co. on which the name "KA Whelehan" appears, and uncertified documentation from the SSA showing earnings for Plaintiff from the Bath Volunteer Fire Department. *Id.* Plaintiff never worked at the Bath Volunteer Fire Department, so this document was the result of an SSA error.

In response, Plaintiff received a letter from BoA stating that there was no "record of a vested pension benefit for [her] and there [were] no documents indicating a benefit due." *Whelehan*, 5 F. Supp. at 414. Accordingly, BoA "determined there [was] no deferred vested pension benefit payable to [her] from the Plain." *Id.* A few weeks later, Plaintiff sent a letter to BoA requesting review of the denial of benefits. Attached to the letter was the same email from her old colleague at Security Trust that she initially sent BoA, a payroll record from Security Trust

---

[2] The Legacy Plan is an employee benefit plan within the meaning of ERISA § 3(2)(A). (Complaint ¶ 2.) The Plan Sponsor is Bank of America Corporation and the Plan Administrator is the Bank of America Corporate Benefits Committee.

2

Co. showing taxable wages for an unknown time period that was almost entirely redacted, and a document from the SSA listing "Victor Central School District President Board of Education" with an unattributed handwritten note stating "Bank reported wages under wrong EIN." *Id.* at 415.

On November 17, 2011, BoA responded that it was treating Plaintiff's letter as a formal claim for benefits under the Plan's claims procedure and disclosed part of a document detailing the claims process to Plaintiff. *Id.* On February 7, 2012, BoA informed Plaintiff that it was denying her claim because there was insufficient proof to establish a vested benefit in the Legacy Plan. *Id.* More specifically, the letter explained that Plaintiff "could only be due a Plan benefit if [her] period of employment [with Security Trust Co.] made [her] eligible for Plan benefits, [she] participated in the Plan, and [she] actually accrued a vested benefit under the Plan during [her] period of employment." *Id.* BoA continued that it had "conducted a good faith exhaustive search," but found that "while predecessors to the Plan were maintained during this period [i.d., 1972 to 1988], the Plan's records did not indicate that [Plaintiff was] eligible for a vested benefit based" on her period of employment. *Id.* The letter from BoA noted that she had provided the email from her old coworker and other documents, but that she had failed to provide "any documentation (such as a terminated vested letter or pension benefit statement) to show that [she] [is] entitled to a vested benefit under the Plan." *Id.* As a result, Bank of America was "unable to verify" that Plaintiff was "eligible for a Plan benefit." *Id.*

The letter noted that Plaintiff had 60 days to appeal the decision and could submit new evidence to substantiate her claim, and it warned her that "[f]ailure to raise issues or present evidence on review may preclude those issues or evidence from being presented in any subsequent proceeding or judicial review of the claim." *Id.* The letter further stated that "[i]n reviewing the decision on a benefit claim, the Benefits Appeals Committee shall have full authority to interpret

3

and apply in its discretion the provision of the [Legacy] Plan. Its decision shall be final and binding." *Id.*

Plaintiff appealed her claim and submitted two items of new evidence: 1) a record from the SSA indicating earnings in 1972 from Security Trust Company and an undated, unsworn letter from a former Security Trust Co. executive stating Plaintiff had worked at Security Trust from 1972 to 1988. BoA denied her appeal, stating that there was insufficient proof to establish a vested benefit under the Plan. The BoA Benefits Appeals Committee explained that they "conducted a further good faith exhaustive search" but had "not found any records indicating that [she] [is] eligible for a Plan benefit." Id. Furthermore, BoA did "not have any employment records or information confirming [her] period of employment with Security Trust Company and successor organizations." *Id.* BoA noted that Plaintiff's submitted documentation was not proof of a benefit under the Plan and that she failed to provide the suggested pension benefit statement or terminated vested letter. *Id.* BoA further explained that proof of Plaintiff's employment with a BoA predecessor bank such as Security Trust Co. did not constitute conclusive proof of her eligibility for retirement benefits under the Legacy Plan. *Id.* Finally, BoA informed Plaintiff that she exhausted her appeals but could bring a civil action under Section 502(a) of ERISA. *Id.*

**B.  First Federal Lawsuit**

In 2013, Plaintiff filed a lawsuit in the United States District Court for the Western District of New York ("*Whelehan I*") against Defendants seeking the following: (1) an order determining that she is a participant in the Legacy Plan and awarding her pension benefits with respect to her entire period of employment with Security Trust Co.; (2) a finding that Defendants violated Section 104(b)(4) of ERISA for failing to produce documents within thirty days; (3) a finding that BoA breached its fiduciary duty to her by failing to produce access to employment records; and (4) a

4

finding that the Trustees of the Plan breached their fiduciary duty to her. *Whelehan*, 5 F. Supp. at 413.

Ultimately, Judge Michael A. Telesca granted summary judgment in favor of Defendants and dismissed the case with prejudice. *Id.* at 424-25. He found that Defendants' denial of Plaintiff's claim was not arbitrary and capricious and that there was "no affirmative evidence in the record that elucidate[d] Plaintiff's status as vested under the Plan." *Id.* at 425. He noted that the Benefits Appeals Committee had even "informed Plaintiff of several different documents she could submit that would be probative of her claim for benefits—such as a terminated vested letter—but she never submitted such documents or requested any documents relevant to her claim from Bank of America." *Id.*

On April 11, 2014, Plaintiff filed a motion for reconsideration, which Judge Telesca denied with prejudice. *See Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, No. 6:12-CV-6279, 2014 U.S. Dist. LEXIS 121240, at *1 (W.D.N.Y. Aug. 29, 2014). On October 30, 2015, the Second Circuit affirmed Judge Telesca's ruling, explaining that Plaintiff's "lackluster" submissions to BoA in support of her pension claim was a "motley array of uncertified, ambiguous documents" and that BoA's decision denying her claim was therefore "not arbitrary or capricious." *Whelehan v. Bank of AM. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, 621 F. App'x 70, 72 (2d Cir. 2015) (summary order).

Apparently unfazed by losing three times in federal court, Plaintiff submitted an application for benefits to the Legacy Plan on December 28, 2016. This time, Plaintiff submitted new evidence to BoA that she did not use to support her initial claim, including an affidavit of employment by Security Trust, an affidavit of the former-Senior Vice President for Human Resources of Security Trust sharing his personal understanding of the Security Trust Pension Plan and Plaintiff's

entitlement to benefits, a corrected SSA record that did not falsely indicate that Plaintiff worked for the Bath Volunteer Fire Department, and an affidavit concerning Security Trust's publications of Plaintiff's employment. The Legacy Plan never responded to Plaintiff's application.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor," *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. These factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 545, and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

**I.    ERISA Claim**

Plaintiff makes four allegations in this suit: 1) that the Legacy Plan wrongfully denied Plaintiff her benefits; 2) that the Plan failed to reply to Plaintiff's benefits application within 90 days, as required under ERISA § 503; 3) that the Plan's failure to provide Plaintiff copies of the requested Plan and Summary Plan Description within 30 days violates her rights under ERISA §104(b)(4); and (4) that fiduciaries of the Plan breached their fiduciary duty to Plaintiff. ECF No. 1.

Defendants argue that Plaintiff's claims are barred by *res judicata* because she is raising the same allegations that this Court dismissed in *Whelehan I* with prejudice. ECF No. 9-1 at 10-14. Plaintiff asserts that this new suit is distinguishable, because *Whelehan I* merely involved her "effort to obtain a pension benefit estimate," while this case involves her "right to have her application for benefits processed in accordance" with ERISA. She also argues that "*Whelehan I* . . . [does] not block review of the Plan's new determination on the sufficiency of newly-introduced evidence." *Id.* at 6. In other words, because Plaintiff is advancing new claims and submitted entirely new evidence to the Plan that the Court did not contemplate in *Whelehan I*, *res judicata* does not apply to this suit.

Plaintiff is correct that new facts can bar the application of *res judicata*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.2d 493, 500 (2d Cir. 2014) ("[W]hen post-judgment conduct is sufficient to state a cause of action in its own—without the need to incorporate facts that preceded the first suit—the later course of conduct underlying the second suit gives rise to a new cause of action that is not barred by *res judicata*."). For the reasons that follow, however, the Court need not rely on the theory of *res judicata* to dismiss this suit.

Even though Plaintiff's initial suit was based on a request for pension status and not a formal benefits application, Defendants treated her initial request as a formal claim for benefits. *See Whelehan*, 5 F. Supp. at 415. Where a plan has conferred discretion upon the administrator, which the Legacy Plan has, a reviewing court "will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Id.* at 417. Judge Telesca employed this standard of review in *Whelehan I*, as did the Second Circuit. Under the arbitrary and capricious standard of review, "a denial of benefits may be overturned only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Demirovic v. Bldg. Serv. 32-B-J Pension*

*Fund*, 467 F.3d 208, 212 (2d Cir. 2006). The district court may only consider the arguments and evidence before the administrator at the time it made that decision. *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).

Although the Second Circuit has not directly spoken to the issue, other courts have explicitly denied the argument that a plaintiff has "an unlimited right to submit additional evidence" of entitlement to benefits. *McCay v. Drummond Co., Inc.,* 509 F. App'x 944, 949 (11th Cir. 2013). The closely-related cases *Blair v. Metro. Life Ins. Co.*, 167 F. Supp. 3d 1272 (M.D. Al. 2016) and *Blair v. Metro. Life Ins. Co.*, 569 F. App'x 827 (11th Cir. 2014) ("*Blair II*" and "*Blair I*," respectively) are instructively analogous cases. There, the plaintiff received long term disability benefits under a plan administered by MetLife. *Blair II* at 1276. MetLife terminated the plaintiff's benefits after determining that she was no longer eligible for them. *Id.* The plaintiff administratively appealed the decision, but MetLife denied it, informing her that she had exhausted her administrative remedies. *Id.* at 1275. Roughly two years later, the plaintiff undertook what she described as a "second appeal" by submitting additional evidence to MetLife in support of her claim to disability benefits. *Id.* at 1276.

The Eleventh Circuit and the Northern District of Alabama rejected the argument that MetLife had an ERISA-driven obligation to reconsider the plaintiff's disability claim in light of the new evidence she submitted two years after MetLife rejected her appeal. As the district court stated,

> once a final denial of an ERISA claim has occurred and the claims administrator has advised the plaintiff that she has exhausted her administrative remedies, a plaintiff's subsequent submissions in support of her finally-determined benefits claim . . . do not expand the scope of the record for determining ERISA liability. Instead, those records are meaningless non-events insofar as an administrator's exposure to ERISA liability is concerned.

*Blair II* at 1278. Like Metlife's denial of the *Blair* plaintiff's claim on appeal, BoA's denial of Plaintiff's appeal was final and advised her that she had exhausted her administrative remedies. Plaintiff's new evidence—which, as Defendants point out, is nearly identical to evidence that Defendants, this Court, and the Second Circuit already rejected as inadequate—is irrelevant and does not expand the scope of the record for determining ERISA liability.

The Eighth Circuit's reasoning in *Davidson v. Prudential Ins. Co. of Amer.*, 953 F.2d 1093 (8th Cir. 1992) is also instructive. The plaintiff there received disability benefits for two years, after which the administrator of his disability plan, Prudential, determined he was no longer eligible for benefits. *Davidson*, 953 F.2d at 1094. The plaintiff accepted Prudential's offer to submit additional evidence and request a reconsideration of the denial. *Id.* After considering new evidence, Prudential upheld its initial decision denying Plaintiff's continued eligibility for benefits. *Id.* The plaintiff brought an ERISA action against Prudential in federal district court, which he lost. *See id.* The plaintiff argued on appeal that the district court erred when it failed to remand the case to the administrator to consider a vocational report that had been prepared after federal litigation commenced. *Id.* at 1095.

The Eighth Circuit rejected the plaintiff's argument, stating that the additional evidence "was known or should have been known to [the plaintiff] during the administrative proceedings" and that "if [the plaintiff] believed the evidence he now offers was necessary for Prudential to make a proper benefits determination, [the plaintiff] should have obtained this evidence and submitted it to Prudential." *Id.* Having "failed to do so," the plaintiff's "offer of additional evidence at this point amounts to nothing more than a last-gasp attempt to quarrel with Prudential's determination" that he was ineligible for benefits. *Id.* The same reasoning applies here. The additional evidence that Plaintiff wants Defendants to consider now—the affidavits from her

former coworkers and publications of her status as a Security Trust employee—were available to her when she pursued benefits at the administrative level, but she failed to submit them to BoA. Moreover, Defendants explicitly told her the types of documents that she could submit on appeal to support her claim, but she failed to do so. The documents she seeks to submit to Defendants now are similar to those that Defendants and two federal courts have already rejected. Thus, her "last-gasp" attempt to fight BoA's final and binding rejection of her benefits fails.

## II. Attorney's Fees

ERISA provides that "in any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." ERISA § 502(g)(1). Courts may consider five factors in deciding a request for attorney's fees: (1) the degree of the offending party's bad faith; (2) the party's ability to satisfy an attorney fee award; (3) whether an award of fees would deter others; (4) the merits of the parties' positions; and (5) whether the action conferred a common benefit on a group of plan participants. *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987).

Courts that have evaluated these five factors "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." *Critelli v. Fidelity Nat'l Title Ins. Co. of New York*, 554 F. Supp. 2d 360, 363 (E.D.N.Y. 2008). The Second Circuit in particular has observed that losing defendants "must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a congressional mandate," whereas losing plaintiffs "will not necessarily be found 'culpable,' but may be only in error or unable to prove his case." *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir.2000). Moreover, the Circuit has stated that a decision to grant attorney's fees, although "uniquely within the province of a district court" must be "made with

restraint and discretion." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).

The first factor regarding "bad faith" is "the most significant to the overall determination whether a defendant should be awarded attorney's fees in an ERISA setting." *Critelli*, 554 F. Supp. 2d at 364. On the first factor, Defendants argue that "Plaintiff has brought this lawsuit in bad faith knowing that her claims are barred under the doctrine of *res judicata*." ECF No. 9-1 at 21-22. Plaintiff's brief, however, genuinely indicates her belief that this lawsuit was based on new facts, and it is not apparent that bad faith motivates this latest attempt, however misguided. Additionally, this Court did not ultimately base this decision on *res judicata*. Accordingly, the first factor does not weigh in favor of Defendants.

The second factor, "ability of the party to satisfy an award of attorney's fees," weighs in favor of Defendants. Defendants accurately note that "Plaintiff has demonstrated that she has the resources to assume the benefits and burdens of litigation by engaging in prolonged litigation up to the Supreme Court," and that "as of July 18, 2013, Plaintiff was in a very affluent position as president and CEO of Upstate Bank." ECF No. 9-1 at 22. Plaintiff has not refuted Defendants' findings, so this factor weighs against her.

The third factor of deterrence "should be used as a shield, to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail and not 'as a sword to discourage beneficiaries' from pursuing certain meritless claims." *Critelli*, 554 F. Supp. at 368. Even if it might discourage similar suits, "an award of attorney's fees in this instance" in which Defendants seek to use the factor as a sword "would work against ERISA's purpose in protecting beneficiaries." *Id.*

The fourth factor of merits clearly weighs in favor of Defendants, who won the Motion to Dismiss, but because the "Court has already determined that Plaintiff did not act in bad faith, . . . Plaintiff's position can hardly be deemed to be so disproportionately meritless as to justify the imposition of an award of attorney's fees." *Id.* at 369.

Defendants argue that the fifth factor of "whether the action conferred a common benefit on a group of plan participants" weighs against Plaintiff because the Plan "has to spend money defending itself against frivolous litigation." ECF No. 9-1 at 23. While Plaintiff's unsuccessful suit did not confer a common benefit on a group of plan participants, Defendants do not cite a case where the court used the plaintiff's failure against him based on this fifth factor, nor will this Court do so now.

Based on the five-factor analysis above, the Court declines to award attorney's fees to Defendants.

## CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (ECF No. 9) is GRANTED, and Plaintiff's Complaint (ECF No. 1) is DISMISSED. The Defendants' request for attorney's fees is DENIED. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: August 14, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court